1 **BRODSKY SMITH**
Evan J. Smith, Esquire (SBN 242352)
2 esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
3 rcardona@brodskysmith.com
4 9465 Wilshire Boulevard, Suite 300
Beverly Hills, CA 90212
5 Phone: (877) 534-2590
Facsimile: (310) 247-0160
6
7 *Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARSH SAINI, <br><br> Plaintiff, <br><br> vs. <br><br> REGULUS THERAPEUTICS, INC., STELIOS PAPADOPOULOS, DAVID BALTIMORE, KATHRYN J. COLLIER, JAY HAGAN, PRESTON KLASSEN, ALICE S. HUANG, JAKE R. NUNN, WILLIAM H. RASTETTER, HUGH ROSEN, and PASCALE WITZ, <br><br> Defendants. | **Case No.:** '25CV1362 BJC KSC <br><br> **Complaint For:** <br><br> (1) Violation of § 14 (e) of the Securities Exchange Act of 1934 <br> (2) Violation of § 14 (d) of the Securities Exchange Act of 1934 <br> (3) Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Arsh Saini ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Regulus Therapeutics, Inc. ("Regulus" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of

- 1 -
COMPLAINT

Sections 14(e), 14(d), and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Novartis AG ("Parent") through a wholly owned subsidiary, Redwood Merger Sub Inc. ("Merger Sub," and together with Parent, "Novartis") as a result of an unfair process, and to enjoin an upcoming tender offer on a proposed all cash transaction (the "Proposed Transaction").

2.     The terms of the Proposed Transaction were memorialized in an April 30, 2025, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the transaction, Novartis will acquire Regulus for an initial payment of $7.00 per share in cash at closing, or $0.8 billion. In addition, Regulus shareholders will receive a contingent value right providing for payment of $7.00 per share, contingent upon the achievement of a milestone with respect to regulatory approval of Regulus' lead product candidate, farabursen.

3.     Thereafter, on May 27, 2025, Regulus filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC in support of the Proposed Transaction.

4.     The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits.

5.     As detailed below, the Recommendation Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Regulus, provided by Regulus to the Company's financial advisors Evercore Group LLC ("Evercore"); and (c) the data and inputs underlying the financial valuation analyses, that purport to support the fairness opinion by Evercore, and provided to the Company, and the Board. Accordingly, this action seeks to enjoin the Proposed Transaction.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

# PARTIES

7. Plaintiff is a resident of Canada and is a Regulus stockholder.

8. Defendant Regulus, a clinical-stage biopharmaceutical company, engages in the discovery and development of drugs that targets microRNAs to treat a range of diseases in the United States. The Company is incorporated in the State of Delaware, has its principal executive offices located at 4224 Campus Point Court, Suite 210, San Diego, CA 92121, and its shares trade on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "RGLS."

9. Defendant Stelios Papadopoulos ("Papadopoulos") has been Chairman of the Company Board at all relevant times.

10. Defendant David Baltimore ("Baltimore") has been a Director of the Company at all relevant times.

11. Defendant Kathryn J. Collier ("Collier") has been a Director of the Company at all relevant times.

12. Defendant Jay Hagan ("Hagan") has been a director of the Company at all relevant times. In addition, Defendant Hagan serves as the Company's Chief Executive Officer ("CEO").

13. Defendant Preston Klassen ("Klassen") has been a Director of the Company at all relevant times. In addition, Defendant Klassen serves as the Company's President.

14. Defendant Alice S. Huang ("Huang") has been a director of the Company at all relevant times.

15. Defendant Jake R. Nunn ("Nunn") has been a director of the Company at all relevant times.

16. Defendant William H. Rastetter ("Rastetter") has been a director of the Company at all relevant times.

17. Defendant Hugh Rosen ("Rosen") has been a director of the Company at all relevant times.

18. Defendant Pascale Witz (Witz") has been a director of the Company at all relevant times.

19. Defendants identified in ¶¶ 9-18 are collectively referred to as the "Individual Defendants."

20. Non-Party Parent engages in the research, development, manufacture, distribution, marketing, and sale of pharmaceutical medicines in Switzerland and internationally.

21. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

25. Regulus, a clinical-stage biopharmaceutical company, engages in the discovery and development of drugs that targets microRNAs to treat a range of diseases in the United States. The company develops farabursen, an anti-miR oligonucleotide targeting miR-17 in Phase 1b clinical

trial for the treatment of autosomal dominant polycystic kidney disease. It is also developing a pipeline of preclinical drug products for target organ-selective delivery strategies. The company has a license and collaboration agreement with Alnylam Pharmaceuticals, Inc. and Ionis Pharmaceuticals, Inc. to develop, manufacture, and commercialize products covered by the licensed patent rights for use in microRNA compounds.

*The Flawed Sales Process*

26. As detailed in the Recommendation Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

27. Additionally, the Recommendation Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Novartis, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Recommendation Statement, if so in all specific manners.

28. The Recommendation Statement fails to provide complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction.

29. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

30. On April 30, 2025, Regulus and Novartis issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN DIEGO, April 30, 2025 /PRNewswire/ -- Regulus Therapeutics Inc. (Nasdaq: RGLS), a biopharmaceutical company focused on the discovery and development of innovative medicines targeting microRNAs (the "Company" or "Regulus"), today announced that it has entered into an agreement and plan of merger with Novartis AG ("Novartis") and an indirectly wholly owned subsidiary of Novartis, pursuant to which Novartis will acquire Regulus for an initial payment of $7.00 per share in cash at closing, or $0.8 billion. The upfront cash portion of the consideration represents a premium of 274 percent to Regulus' 60-day volume-

weighted average stock price and 108 percent to Regulus' closing price on April 29, 2025. In addition, Regulus shareholders will receive a contingent value right (CVR) providing for payment of $7.00 per share, contingent upon the achievement of a milestone with respect to regulatory approval of Regulus' lead product candidate, farabursen. Total consideration including the CVR, if the milestone is achieved, would be approximately $1.7 billion. The transaction has been unanimously approved by the Boards of Directors of both companies.

"We are excited to combine with Novartis to potentially bring farabursen to patients living with ADPKD, who currently have limited treatment options. Novartis' established global development and commercial capabilities will enable this important new medicine to reach patients if approved," said Jay Hagan, CEO of Regulus Therapeutics. "I am proud of the work that our team at Regulus has achieved in advancing this important new therapy and would like to thank all of the patients, investigators, and the ADPKD community in moving our program forward to this important milestone."

"With limited treatment options currently available for patients suffering from ADPKD, farabursen represents a potential first-in-class medicine with a profile that may provide enhanced efficacy, tolerability and safety versus standard of care," said Shreeram Aradhye, President, Development and Chief Medical Officer, Novartis. "ADPKD is the most common genetic cause of renal failure worldwide. The team at Regulus has done meaningful foundational work with farabursen, and we look forward to investigating its potential further as we aim to bring a better treatment option to patients in need."

Completion of the transaction is expected in the second half of 2025, subject to the satisfaction or waiver of customary closing conditions, including the tender of shares representing at least a majority of the total number of Regulus' outstanding shares, and other customary closing conditions and regulatory clearance. Until that time, Regulus will continue to operate as a separate and independent company.
Evercore is serving as exclusive financial advisor, and Latham & Watkins LLP is serving as legal counsel to Regulus.

*Potential Conflicts of Interest*

31.     The breakdown of the benefits of the deal indicates that Company insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Regulus.

32.     Company insiders currently own large, illiquid portions of Company stock, which

will be converted into the merger consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | Number of Shares Owned (#) | Cash Consideration for Shares Owned ($)(1) | Cash Consideration for CVRs in Respect of Shares Owned ($)(2) |
|---|---|---|---|
| *Executive Officers* | | | |
| Joseph P. Hagan*(3) | 290,808 | 2,035,656 | 2,035,656 |
| Preston S. Klassen* | 36,055 | 252,385 | 252,385 |
| Cris Calsada | 56,728 | 397,096 | 397,096 |
| Christopher Aker | 60,796 | 425,572 | 425,572 |
| *Non-Employee Directors* | | | |
| David Baltimore(4) | 22,169 | 155,183 | 155,183 |
| Kathryn Collier | 6,740 | 47,180 | 47,180 |
| Alice S. Huang(5) | — | — | — |
| Jake R. Nunn | — | — | — |
| Stelios Papadopoulos | 978,388 | 6,848,716 | 6,848,716 |
| William H. Rastetter | 39,056 | 273,392 | 273,392 |
| Hugh Rosen | 1,771 | 12,397 | 12,397 |
| Pascale Witz | 11,503 | 80,521 | 80,521 |

33.     Company insiders currently own illiquid portions of Company Options, RSUs, and PSUs, some of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Recommendation Statement provides the following but does not account for the merger consideration each of these amounts will be exchanged for upon the consummation of the Proposed Transaction:

| Name | Number of Shares Subject to Vested In the Money Options (#) | Cash Consideration for Vested In the Money Options(1) ($) | Number of Shares Subject to Unvested In the Money Options (#) | Cash Consideration for Unvested In the Money Options(1) ($) | Number of CVRs to be Issued in Respect of In the Money Options (#) | Cash Payment for CVRs to be Issued in Respect of In the Money Options(2) ($) | Number of Shares Subject to Vested Out of the Money Options (#) | Number of CVRs to be Issued in Respect of Vested Out of the Money Options (#) | Cash Payment for CVRs to be Issued in Respect of Vested Out of the Money Options(3) ($) |
|---|---|---|---|---|---|---|---|---|---|
| **Executive Officers** | | | | | | | | | |
| Joseph P. Hagan* | 1,308,886 | 6,590,390 | 3,912,613 | 21,832,409 | 5,221,499 | 36,550,493 | 127,499 | 127,499 | 141,749 |
| Preston S. Klassen* | 494,394 | 2,708,461 | 1,900,606 | 10,575,539 | 2,395,000 | 16,765,000 | — | — | — |
| Cris Calsada | 452,020 | 2,285,902 | 1,581,979 | 8,786,794 | 2,033,999 | 14,237,993 | 19,999 | 19,999 | 17,999 |
| Christopher Aker | 426,723 | 2,142,164 | 1,363,526 | 7,601,782 | 1,790,249 | 12,531,743 | 31,250 | 31,250 | 39,825 |
| **Non-Employee Directors** | | | | | | | | | |
| David Baltimore(4) | 148,650 | 741,990 | — | — | 148,650 | 1,040,550 | 6,325 | 6,325 | 28,490 |
| Kathryn Collier | 148,650 | 741,990 | — | — | 148,650 | 1,040,550 | 6,325 | 6,325 | 28,490 |
| Alice S. Huang(5) | 144,000 | 739,200 | — | — | 144,000 | 1,008,000 | 4,000 | 4,000 | 16,400 |
| Jake R. Nunn | 148,650 | 741,990 | — | — | 148,650 | 1,040,550 | 6,325 | 6,325 | 28,490 |
| Stelios Papadopoulos | 148,650 | 741,990 | — | — | 148,650 | 1,040,550 | 6,325 | 6,325 | 28,490 |
| William H. Rastetter(6) | 148,650 | 741,990 | — | — | 148,650 | 1,040,550 | 6,325 | 6,325 | 28,490 |
| Hugh Rosen | 148,650 | 741,990 | — | — | 148,650 | 1,040,550 | 6,325 | 6,325 | 28,490 |
| Pascale Witz | 148,650 | 741,990 | — | — | 148,650 | 1,040,550 | 6,325 | 6,325 | 28,490 |

| Name | Number of Shares Subject to RSU Awards (#) | Cash Consideration for RSU Awards ($)(1) | Number of CVRs in Respect of RSU Awards (#) | Cash Payment for CVRs to be Issued in Respect of RSU Awards ($)(2) |
|---|---|---|---|---|
| **Executive Officers** | | | | |
| Joseph P. Hagan* | — | — | — | — |
| Preston S. Klassen* | — | — | — | — |
| Cris Calsada | — | — | — | — |
| Christopher Aker | — | — | — | — |
| **Non-Employee Directors** | | | | |
| David Baltimore(3) | 62,500 | 437,500 | 62,500 | 437,500 |
| Kathryn Collier | 62,500 | 437,500 | 62,500 | 437,500 |
| Alice S. Huang(4) | 62,500 | 437,500 | 62,500 | 437,500 |
| Jake R. Nunn | 62,500 | 437,500 | 62,500 | 437,500 |
| Stelios Papadopoulos | 62,500 | 437,500 | 62,500 | 437,500 |
| William H. Rastetter | 62,500 | 437,500 | 62,500 | 437,500 |
| Hugh Rosen | 62,500 | 437,500 | 62,500 | 437,500 |
| Pascale Witz | 62,500 | 437,500 | 62,500 | 437,500 |

| Name | Number of Shares Subject to PSU Awards (#) | Cash Consideration for Unvested PSU Awards ($)(1) | Number of CVRs in Respect of PSU Awards (#) | Cash Payment for CVRs to be Issued in Respect of PSU Awards ($)(2) |
|---|---|---|---|---|
| *Executive Officers* | | | | |
| Joseph P. Hagan* | 280,750 | 1,965,250 | 280,750 | 1,965,250 |
| Preston S. Klassen* | 67,500 | 472,500 | 67,500 | 472,500 |
| Cris Calsada | 83,500 | 584,500 | 83,500 | 584,500 |
| Christopher Aker | 83,125 | 581,875 | 83,125 | 581,875 |

34. In addition, employment agreements with certain Regulus executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff. The golden parachute compensation is as follows:

| Name(1) | Cash ($)(2) | Equity ($)(3) | Tax Reimbursement ($)(4) | Other ($)(5) | Total ($) |
|---|---|---|---|---|---|
| Joseph P. Hagan | 1,743,610 | 53,151,200 | 8,482,381 | 750,000 | 64,127,191 |
| Preston S. Klassen, M.D. | 837,616 | 24,824,781 | 4,124,847 | 350,000 | 30,137,244 |
| Cris Calsada | 695,696 | 21,029,647 | 3,515,508 | 350,000 | 25,590,851 |

35. The Recommendation Statement also fails to adequately disclose communications regarding post-transaction employment, if any, which took place during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*36.* Thus, while the Proposed Transaction is not in the best interests of Regulus, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Recommendation Statement***

37. The Regulus Board caused to be filed with the SEC a materially misleading and incomplete Recommendation Statement, that in violation the Exchange Act, failed to provide

Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

38. The Recommendation Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Recommendation Statement fails to disclose:

    a. Whether the terms of any confidentiality agreements entered during the sales process between Company on the one hand, and any other third party (including Novartis), if any, differed from one another, and if so, in all specific manners; and

    b. Communications regarding post-transaction employment during the negotiation of the underlying transaction.

*<u>Omissions and/or Material Misrepresentations Concerning Regulus Financial Projections</u>*

39. The Recommendation Statement fails to provide material information concerning financial projections for Regulus provided by Regulus management to Evercore and relied upon by Evercore in its analyses. The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading.

40. Notably, the Recommendation Statement reveals that as part of its analyses, Evercore reviewed: "certain internal projected financial data relating to the Company, prepared and furnished to Evercore by management of the Company, as approved for Evercore's use by the Company."

41. The Recommendation Statement should have, but fails to provide, certain information in the projections that Regulus management provided to Evercore. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples.

1  What they cannot hope to do is replicate management's inside view of the company's prospects."
2  *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

3      42.   With regards to the *Certain Unaudited Prospective Financial Information* the
4  Recommendation Statement fails to disclose:

5          a.  Total Net Revenue, including the underlying inputs, metrics, and assumptions
6              used to determine same;

7          b.  Gros Profit, including the underlying inputs, metrics, and assumptions used to
8              determine same;

9          c.  EBIT, including the underlying inputs, metrics, and assumptions used to
10             determine same; and

11         d.  Unlevered Free Cash Flow, including the underlying inputs, metrics, and
12             assumptions used to determine same.

13     43.   The Recommendation Statement also fails to disclose a reconciliation of all non-
14  GAAP to GAAP metrics utilized in the projections.

15     44.   This information is necessary to provide Plaintiff, in his capacity as a Company
16  stockholder, with a complete and accurate picture of the sales process and its fairness. Without this
17  information, Plaintiff is not fully informed as to Defendants' actions, including those that may
18  have been taken in bad faith, and cannot fairly assess the process.

19     45.   Without accurate projection data presented in the Recommendation Statement,
20  Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Evercore's
21  financial analyses, or make an informed decision whether to vote his shares in favor of the
22  Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include
23  such information in the Recommendation Statement.

24     *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*
25     *Evercore*

26     46.   In the Recommendation Statement, Evercore describes its fairness opinion and the
27  various valuation analyses performed to render such an opinion. However, the descriptions fail to
28

include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

47. With respect to the *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose the following:

   a. The inputs, metrics, and assumptions used to determine the perpetuity growth rate of negative 70% utilized;

   b. The inputs, metrics, and assumptions used to determine the discount rates range of 15.5% to 18.5% utilized;

   c. The inputs, metrics, and assumptions used to determine the Company's estimated net cash utilized;

   d. The inputs, metrics, and assumptions used to determine the Company's estimated gross debt as of June 30, 2025 utilized; and

   e. The number of fully diluted Company shares of Shares as of April 28, 2025.

48. With respect to the *Equity Research Analyst Price Targets*, the Recommendation Statement fails to disclose the following:

   a. The specific price targets analyzed; and

   b. The specific Wall Street firms that generated the analyzed price targets.

49. With respect to the *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the following:

   a. The specific target companies analyzed;

   b. The Final Bid Premium to Unaffected Price for each of the target companies analyzed; and

   c. The inputs, metrics, and assumptions used to determine the premium range of 49% to 103% utilized.

50. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

51. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Recommendation Statement.

## FIRST COUNT

## Violations of Section 14(e) of the Exchange Act

## (Against All Defendants)

52. Plaintiff repeats all previous allegations as if set forth in full herein.

53. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

54. Section 14(e) of the Exchange Act provides that in the solicitation of shares in a tender offer, "[i]t shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]"

55. The Recommendation Statement was prepared in violation of Section 14(e) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

56. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

57. The Individual Defendants were at least negligent in filing a Recommendation Statement that was materially misleading and/or omitted material facts necessary to make the Recommendation Statement not misleading.

58. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender

1 his shares on the basis of complete information if such misrepresentations and omissions are not 2 corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

3     59.    Plaintiff has no adequate remedy at law.

## SECOND COUNT

### Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9

### (Against all Defendants)

60. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

61. Defendants have disseminated the Recommendation Statement with the intention of soliciting stockholders, including Plaintiff, to tender their shares in favor of the Proposed Transaction.

62. Section 14(d)(4) requires Defendants to make full and complete disclosure in connection with a tender offer.

63. SEC Rule 14d-9 requires a Company's directors to furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

64. Here, the Recommendation Statement violates both Section 14(d)(4) and SEC Rule 14d-9 because it because it is materially misleading in numerous respects, omits material facts, including those set forth above and Defendants knowingly or recklessly omitted the material facts from the Recommendation Statement.

65. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to tender his shares on the basis of complete information if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer period regarding the Proposed Transaction.

66. Plaintiff has no adequate remedy at law.

## THIRD COUNT

## Violations of Section 20(a) of the Exchange Act

## (Against all Individual Defendants)

67. Plaintiff repeats all previous allegations as if set forth in full herein.

68. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Recommendation Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Recommendation Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Recommendation Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Recommendation Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Regulus's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Recommendation Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Recommendation Statement and are therefore responsible and liable for the misrepresentations contained herein.

71.     The Individual Defendants acted as controlling persons of Regulus within the meaning of Section 20(a) of the Exchange Act.  Because of their position with the Company, the Individual Defendants had the power and authority to cause Regulus to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Regulus and all of its employees.  As alleged above, Regulus is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.    Enjoining the Proposed Transaction;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 29, 2025          **BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9465 Wilshire Blvd., Ste. 300
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*